1

2

3

4

5                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
6                                   AT SEATTLE

7    STERLING J.M. LLAMAS,

8                              Plaintiff,            CASE NO. C14-0699-RAJ-MAT

9          v.

10   CAROLYN W. COLVIN, Acting               REPORT AND RECOMMENDATION
     Commissioner of Social Security,        RE: SOCIAL SECURITY DISABILITY
11                                           APPEAL

                               Defendant.
12

13         Plaintiff Sterling Llamas proceeds with counsel in his appeal of a final decision of the

14   Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15   denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

16   Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17   record (AR), and all memoranda, the Court recommends this matter be REMANDED for further

18   administrative proceedings.

19                     **FACTS AND PROCEDURAL HISTORY**

20         Plaintiff was born on XXXX, 1973.[1]  He did not complete high school or obtain a GED,

21   and has minimal past work experience, with positions in construction/labor and work as a cook

22   ──────────────
           [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
     Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
23   Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE - 1

helper.  (AR 35-37, 173.)

Plaintiff filed his SSI application in September 2011, alleging disability beginning November 1, 2008.  (AR 150-58.)  At hearing, the alleged onset date was amended to September 26, 2011, the application date.  (AR 34.)  *See* 20 C.F.R. § 416.335 (SSI "is not payable prior to the month following the month in which the application was filed").   Plaintiff's application was denied initially and on reconsideration, and he timely requested a hearing.

On June 18, 2012, ALJ M.J. Adams held a hearing, taking testimony from plaintiff and a vocational expert.  (AR 31-60.)  On July 19, 2012, the ALJ issued a decision finding plaintiff not disabled.  (AR 17-26.)

Plaintiff timely appealed.  The Appeals Council denied review on March 12, 2014 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the September 26, 2011 application date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's affective disorder, anxiety disorder, personality disorder, and history of drug and alcohol abuse, in remission, severe.   He found plaintiff's history of deep vein thrombosis nonsevere.  Step three asks whether a claimant's impairments meet or equal a listed impairment.

REPORT AND RECOMMENDATION
PAGE - 2

1   The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

2          If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

3   residual functional capacity (RFC) and determine at step four whether the claimant has

4   demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC to

5   perform the full range of work at all exertional levels, with the following nonexertional

6   limitations:  he can understand, remember, and carry out simple instructions usually required of

7   jobs classified at a level of SVP one and two, or unskilled work; he has an average ability to

8   perform sustained work activities (i.e., maintain attention and concentration, persistence, and

9   pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day, five

10  days a week, or an equivalent work schedule) within customary tolerances of employers' rules

11  regarding sick leave and absence; he can make judgments on simple, work-related decisions; he

12  can respond appropriately to a supervisor, but should not be required to interact as a team

13  member with coworkers; and he cannot deal with the general public, as in a sales/cashier position

14  or where the public is frequently encountered as an essential element of the work process, such

15  as telemarketing, but incidental contact with the general public is not precluded so long as the

16  public is not a part of the work process.  With that RFC, the ALJ concluded plaintiff was unable

17  to perform any past relevant work.

18          If a claimant demonstrates an inability to perform past relevant work or has no past

19  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

20  retains the capacity to make an adjustment to work that exists in significant levels in the national

21  economy.  The ALJ here concluded, with consideration of the Medical-Vocational Guidelines

22  and the assistance of a vocational expert, that jobs exist in significant numbers in the national

23  economy that plaintiff can perform, such as work as a janitor, hand packager, and cleaner, the

REPORT AND RECOMMENDATION
PAGE - 3

latter of which could be performed in isolation at night.  The ALJ, therefore, found plaintiff not disabled.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering the medical opinions, at step two, and in assessing his RFC and credibility.  He requests remand for an award of benefits or, in the alternative, for further administrative proceedings.  The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Evidence</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

REPORT AND RECOMMENDATION
PAGE - 4

1   1983)).

2        The ALJ may reject physicians' opinions "by setting out a detailed and thorough

3   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

4   making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881

5   F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

6   interpretations and explain why they, rather than the doctors', are correct." *Id.*  (citing *Embrey v.*

7   *Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  In this case, for the reasons set forth below, the

8   Court agrees with plaintiff that the ALJ's evaluation of the medical opinion evidence, and the

9   medical evidence as a whole, was inadequate and requires further consideration on remand.

10        The ALJ accorded significant weight to nonexamining physician Dr. Norman Staley's

11   February 2012 evaluation (AR 78-79) finding plaintiff's recurrent deep vein thrombosis

12   nonsevere, and to nonexamining psychologist Dr. Michael Brown's November 2011 evaluation

13   (AR 68-70).   He found their opinions consistent with treatment records and plaintiff's

14   independent daily activities, which included caring for his own personal needs, living at a shelter

15   without any indication of significant problems interacting with others, and walking

16   approximately two miles a day.  (AR 23.)  However, with recognition of the fact that Dr. Brown

17   assessed plaintiff as markedly limited in his ability to interact with the general public (AR 69),

18   the ALJ noted he classified plaintiff's limitation in social functioning as moderate, rather than

19   marked, stating his and Dr. Brown's assessed functional limitations were essentially the same in

20   terms of interacting with coworkers and the general public.  (AR 23.)

21        The ALJ assigned limited weight to Dr. Rolf Kolden's May 2012 medical source

22   statement (AR 794-97), described by the ALJ as indicating plaintiff would be "unable to perform

23   work activity on a sustained basis due to incapacitating anxiety and cognitive dysfunction."  (*Id.*

REPORT AND RECOMMENDATION
PAGE - 5

(citing AR 794-96).)  Dr. Kolden assessed a number of specific marked and severe limitations in functioning, including, *inter alia*, in the ability to maintain attention and concentration, maintain regular attendance and be punctual, to work in coordination with others, to complete a normal workday/week and to perform at a consistent pace, and to interact/ work with the general public, supervisors, and coworkers.  (AR 794-95.)  The ALJ likewise assigned limited weight to the evaluations by examining psychologists Drs. Robert Parker (AR 234-44) and David Widlan (AR 225-33), rendered in June 2010 and May 2011 respectively.  He accurately described both physicians as finding plaintiff markedly and severely limited in various social and cognitive functions, and assigning very low Global Assessment of Functioning (GAF) scores of 40.  (AR 23.)

The ALJ found the assessments by Drs. Kolden, Parker, and Widlan not consistent with plaintiff's independent daily activities and treatment records, as he had previously described them, stating:

> As noted, he reported being in generally good health in February 2012.  His physical treatment records and hearing presentation also evidence adequate social and cognitive functioning.  Dr. Kolden's, Dr. Parker's, and Dr. Widlan's opinions were apparently based in large part if not entirely on the claimant's self-report, but, as noted, he is not entirely credible.

(AR 23-24 (also separately discussing GAF scores).)  The ALJ, nevertheless, deemed the assessed RFC consistent with Dr. Kolden's determination that plaintiff's anxiety "was particularly bad when he had to interact with strangers[,]" and, therefore, precluded plaintiff from working with coworkers in a cooperative manner, and from having more than incidental contact with the general public.  (*Id*. (citing 796).)

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 6

1    In the previous discussion of plaintiff's daily activities, the ALJ had stated:

2    In October 2011, he was homeless.  He enjoyed reading on a daily basis.  He
     claims that he is unable to make appointments due to his mental health symptoms,
3    but treatment records from December 2011 indicate that he missed appointments
     because he was too busy looking for ways to facilitate his drug use.  He reportedly
4    lived in a tent in the woods and walked two miles a day before moving into a
     homeless shelter.  He testified at the hearing in June 2012 that he cooked and
5    sometimes did laundry.  The evidence shows that he is independent in his daily
     activities and gets around as needed.

6

7    (AR 20.)  The ALJ also found no indication plaintiff's mental health symptoms have resulted in

8    inability to interact with others or attend his appointments, stated that plaintiff "gets around as

9    needed[,]" that the evidence reveals "normal and appropriate interactions with his providers

10   since he stopped using heroin in December 2011[,]" and that he "also related appropriately with

11   his representative and myself at the hearing."  (*Id*.)  He additionally noted a normal June 2010

12   mental status examination, plaintiff's report of benefit from his psychotropic medications after

13   he stopped using heroin in December 2011, and his ability to understand and respond to

14   questions at the hearing.  (AR 20-21.)

15         Later, in concluding the medical evidence did not substantiate plaintiff's allegations of

16   disabling mental health symptoms, the ALJ stated that plaintiff continues to go to twice a month

17   counseling sessions, but that his treatment records do not establish any continuous or expected

18   twelve-month period of disabling symptoms since the application date.  (AR 23.)  He added:  "In

19   fact, chemical dependency treatment records from February 2012 show that he was in fairly good

20   health with improved mood and sleep on medication.  He was fully alert and orientated, he was

21   cooperative with good eye contact and normal speech, and he reported no confusion or anxiety."

22   (*Id*. (citations to record omitted).

23         The ALJ did not conduct a drug abuse and alcoholism (DAA) analysis.  A claimant is not

REPORT AND RECOMMENDATION
PAGE - 7

entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. That is, the ALJ must, first, identify disability under the five-step procedure and, second, conduct a DAA analysis to determine whether substance abuse was material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

Where an ALJ finds a claimant not disabled with consideration of substance use, he need not proceed to the second step of the DAA analysis. *See Bustamante*, 262 F.3d at 955. The failure to apply the two-step DAA analysis may, in some circumstances, be harmless error. *See, e.g.*, *Parra*, 481 F.3d at 747 ("Because the DAA Analysis assumed Parra's cirrhosis was disabling, any error in arriving at that initial conclusion would not affect the ALJ's ultimate decision that Parra's alcoholism was material to his cirrhosis.")

The ALJ here found plaintiff's history of drug and alcohol abuse, in remission, severe at step two. However, beyond taking note of the fact that plaintiff stopped using heroin in December 2011 and alcohol in March 2012, the ALJ's consideration of DAA beyond step two was muddled, with no two-step DAA analysis and no clear indication as to when he was and was not taking DAA into account.

Nor did the ALJ clearly discuss DAA in association with the medical opinions of record.

REPORT AND RECOMMENDATION
PAGE - 8

1    Drs. Brown, Parker, and Widlan all assessed plaintiff prior to December 2011, when plaintiff

2    stopped using heroin, with Drs. Parker and Widlan under the misimpression plaintiff had long

3    been in sustained remission from heroin use.  (*See* AR 226-28, 236, 241.)  (*See also* AR 755

4    (reflecting plaintiff's history as a regular user of heroin, among other substances, from age

5    twenty-five through age thirty-eight, including while he was in prison).)  Only treating physician

6    Dr. Kolden rendered an opinion as to plaintiff's abilities after December 2011.  The fact that

7    plaintiff misinformed Drs. Parker and Widlan about his drug use would serve as an additional

8    basis for discounting that opinion evidence and plaintiff's credibility, *see generally Verduzco v.*

9    *Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999), and provide further support for the ALJ's impression

10   those physicians relied largely on plaintiff's self-report.  However, the ALJ's failure to even

11   address the issue highlights the inadequacy of his discussion of the medical evidence as a whole,

12   and the role of DAA in particular.

13            The Court also, as discussed below, finds the ALJ's decision inadequate in other respects.

14   As such, the ALJ should be directed to reconsider the medical evidence of record on remand,

15   with clear consideration of DAA.[2]  The ALJ should also consider obtaining either a consultative

16   examination of plaintiff and/or a medical expert to assist in considering this claim.

17                                            <u>Step Two</u>

18            At step two, a claimant must make a threshold showing that her medically determinable

19   impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

20   _____

21        [2] While finding the ALJ's consideration of the medical record as a whole inadequate, the Court
     finds no error in the ALJ's consideration of marked limitations assessed by Dr. Brown.  Plaintiff contends
22   the ALJ erred in rejecting a portion of Dr. Brown's opinion without adequate explanation for this
     decision.  However, the ALJ properly explained his decision and accounted for Dr. Brown's opinion in
     the RFC by assessing limitations in plaintiff's ability to deal with the general public, and by identifying
23   appropriate jobs at step five.  (*See* AR 21, 23, 25.)

REPORT AND RECOMMENDATION
PAGE - 9

*Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996

(quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening

device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also

required to consider the "combined effect" of an individual's impairments in considering

severity.  *Id*.

        Plaintiff argues error in the ALJ's failure to find deep vein thrombosis (DVT) severe at

step two.  The ALJ noted evidence of plaintiff's DVT beginning in 2010 secondary to heroin

abuse, and recurrent DVT and complications arising from DVT and septic pulmonary emboli

through at least December 2011.  (AR 19.)  Among other observations, the ALJ noted plaintiff's

noncompliance with treatment secondary to his heroin use, and that, following plaintiff's

December 2011 release from a hospitalization and denial of infection symptoms and negative

blood cultures, testing in March 2012 showed "near complete resolution of the pulmonary

emboli."  (*Id*.; citations to record omitted.)  The ALJ stated that, while plaintiff alleged severe leg

pain, he was neurologically intact with a normal gait and five/five strength and full range of

motion in February 2012, was reportedly walking about two miles a day in March 2012, and, in

April 2012, continued to be noncompliant with antibiotic and anticoagulation treatment.  (AR 20;

citations to record omitted.)  The ALJ concluded:

        To his credit, he stopped using heroin and was admitted to an opiod treatment
        program in December 2011, and he is alleging disability based primarily on his
        mental health condition.  He was treated for pneumonia in 2012, but the evidence

1    does not establish any severe physical impairment for any continuous or expected
2    12-month period.

3    (*Id.*; citations to record omitted.)

4        As argued by plaintiff, while noncompliance is clearly relevant to a determination of

5    disability and a claimant's credibility, *see* 20 CFR 416.930; SSR 82-59, and *Molina v. Astrue*,

6    674 F.3d 1104, 1113-14 (9th Cir. 2012), the step two analysis looks only to whether an

7    impairment significantly limits a claimant's ability to perform basic work activities.   In this case,

8    the ALJ appeared to rely significantly on plaintiff's failure to comply with treatment in finding

9    his DVT/alleged leg pain nonsevere.   The ALJ's failure to adequately address plaintiff's DAA as

10   a general matter also potentially implicates his consideration of plaintiff's DAA-related physical

11   impairments.   On remand, the ALJ should consider the record as a whole and reconsider

12   plaintiff's DVT and alleged severe leg pain at step two.   (*See*, *e.g.*, AR 727-29 (February 10,

13   2012: recommending continued six months of anticoagulation treatment, documenting symptoms

14   of swelling and warmth in right leg, "unchanged" from December 2011, and including

15   recommendation to avoid skateboarding and other physical activities that might pose increased

16   risk of injury or fall); AR 654 (February 14, 2012:   "Pt with erythema, pain, swelling

17   intermittently of his R leg where had DVT."); AR 673-74 (March 8, 2012:  plaintiff reported he

18   was homeless and currently sleeping in City Hall shelter at night, walked about two miles daily,

19   and experienced warmth and swelling in his right leg when he walked on it a lot); AR 653

20   (March 26, 2012: noting plaintiff's continued noncompliance with medication and current

21   pneumonia); AR 600-01 (April 5, 2012: plaintiff "frequently subtherapeutic" with

22   DVT/pulmonary embolism treatment because "loses meds etc".); AR 603-04 (April 13, 2012:

23   ongoing symptoms "likely due to DVT/PE and lack of anticoagulation" treatment over past

REPORT AND RECOMMENDATION
PAGE - 11

1    week, advised another course of treatment due to "persistent" symptoms).

2                                    Credibility

3         In assessing credibility, an ALJ must first determine whether a claimant presents

4    "objective medical evidence of an underlying impairment 'which could reasonably be expected

5    to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036

6    (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).   Given

7    presentation of such evidence, and absent evidence of malingering, an ALJ must provide

8    specific, clear, and convincing reasons to reject a claimant's testimony.  *Burrell v. Colvin*, ___

9    F.3d ____, No. 12-16673, 2014 U.S. App. LEXIS 24654 *5-7 (9th Cir. Dec. 31, 2014) (citing

10   *Molina*, 674 F.3d at 1112.  "General findings are insufficient; rather, the ALJ must identify what

11   testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

12   F.3d at 834.  "In weighing a claimant's credibility, the ALJ may consider his reputation for

13   truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

14   daily activities, his work record, and testimony from physicians and third parties concerning the

15   nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec.*

16   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

17        The ALJ in this case found plaintiff's mental health impairments could reasonably be

18   expected to cause some of the alleged symptoms, but found his statements concerning the

19   intensity, persistence, and limiting effects of those symptoms not entirely credible.  He pointed to

20   plaintiff's independent activities, social interaction, and the medical evidence of record, as

21   described and excerpted above, and the absence of evidence revealing limitations from alleged

22   significant adverse side effects from medication.  (AR 23.)  The ALJ also relied, in part, on his

23   own observations of plaintiff at hearing, finding plaintiff's "verbal responses and overall

REPORT AND RECOMMENDATION
PAGE - 12

demeanor . . . not suggestive of a person who is experiencing disabling limitations[,]" and taking note of plaintiff's ability to "interact appropriately with his representative and myself, and to answer questions quite clearly, despite his alleged severe pain and other disabling mental health symptoms." (*Id.*)

An ALJ may properly consider inconsistency and/or contradiction between a claimant's testimony and evidence of his activities, abilities, and the medical record in assessing credibility. *Light*, 119 F.3d at 792, and *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008). An ALJ may also rely, in part, on his own observations of a claimant at hearing, *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), so long as those observations are not "used as a substitute for medical diagnosis." *Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990).

In this case, the errors identified above potentially implicate the ALJ's consideration of plaintiff's credibility.  The ALJ should, as such, reconsider plaintiff's credibility on remand.  In so doing, the ALJ should note that he inaccurately depicted the testimony at hearing as reflecting plaintiff's report that he cooked.  (*Compare* AR 20, *with* AR 41 (plaintiff testified he lived at a homeless shelter, did not cook, and sometimes did laundry, but had trouble with that task).)

## RFC

Plaintiff asserts error in the RFC assessment given the errors in the ALJ's consideration of the medical evidence.  The Court agrees that, following proper consideration of the medical opinion evidence and the medical record as a whole, plaintiff's RFC should be reconsidered on remand.

## CONCLUSION

For the reasons stated above, this matter should be REMANDED for further administrative proceedings.

REPORT AND RECOMMENDATION
PAGE - 13

1

## DEADLINE FOR OBJECTIONS

2

3

4

5

6

7

8

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 13, 2015**.

9

DATED this 20th day of February, 2015.

10

11

12

Mary Alice Theiler
Chief United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION
PAGE - 14